# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW JERSEY.

### OCTOBER TERM, 1871.

---

THE HACKENSACK IMPROVEMENT COMMISSION *vs.* THE NEW JERSEY MIDLAND RAILWAY COMPANY.

1. To entitle a party to a preliminary injunction his right in the subject matter in dispute, and to the remedy applied for, must be clear to the court, and free from reasonable or serious doubt, or established by proceedings at law.

2. If the facts upon which the right depends are established or admitted, and the principles of law which, on those facts, would give the right, are settled and established in this state, it is not always necessary that the claim of the complainant should have been established in a suit at law. The Chancellor may, in such cases, apply the principles as settled by the courts of law to the facts, and allow the injunction.

3. But when the principles of law on which the right rests are disputed, and will admit of doubt, a court of equity, although satisfied as to what is the correct conclusion of law upon the facts, may not, upon the opinion of the equity judge, without a decision of the courts at law establishing such principles, grant the injunction.

4. An injunction will not issue, when the benefit secured by it is of little importance, while it will operate oppressively and to the great annoyance and injury of the defendant, unless the wrong complained of is wanton and unprovoked.

5. The right of the complainants to an injunction depending upon the construction of conflicting provisions in a statute, and the construction of such provisions never having been settled by the courts of law, this court cannot interfere.

---

On rule to show cause why an injunction should not issue against constructing a railroad, so as to obstruct Central avenue in Hackensack.

Mr. Douglas and Mr. C. H. Voorhis, in support of the rule.

Mr. Knapp, contra.

THE CHANCELLOR.

The defendants are a corporation, by virtue of an act approved March 17th, 1870, authorizing the consolidation of four railroad corporations, or any of them, under the name of the New Jersey Midland Railway Company. Three of these companies, the New Jersey Hudson and Delaware Railroad Company, the New Jersey Western Railroad Company, and the Sussex Valley Company, availed themselves of the provisions of the act, and became consolidated under the name prescribed. The consolidated company was, by the act, invested with all the powers and franchises, and subject to all the obligations of the companies that were consolidated. The Western Railroad Company were authorized to construct their road through the county of Bergen, and as no other of these three companies had that authority, the road in that county must be constructed under that charter. The complainants are a board, constituted by an act approved April 1st, 1868, and their powers enlarged by a supplement, approved March 31st, 1869, and another approved April 6th, 1871. By these acts they are authorized to grade, work, repair, and remove encroachments from all streets in the village of Hackensack, and to pass ordinances concerning the streets, and to raise, by taxes and assessment, all moneys required for these purposes. By the act of 1871, they now possess, exclusively, the power of altering, laying out, and vacating streets.

The defendants located their road through Hackensack, and filed the location in the office of the secretary of state,

October 5th, 1870. There was, at that time, but two streets between the hill west of the village, known as the Red Hill, and State street, one of the old streets in the village. These two streets were known as First street and Second street; they are about three hundred and seventy-two feet apart, and are both crossed by the line of the road. Before filing the location, the defendants had fixed upon the grade of their road, and made contracts for the construction through the Red Hill, and between it and State street; and had agreed with the owners of the land there for its use, had taken possession, and begun the embankment upon it. The grade of the road, at First and Second streets, was about twenty-two feet above the surface of the ground, which, there, is a low wet meadow, and this embankment was to be made from the materials had from a deep cut, which the grade required to be made in the Red Hill. After this location, taking possession, arrangements with the owners, and making the contracts, and on the 18th of October, 1870, notice was given of an application for the appointment of surveyors, under the general road law, to lay out a road from State street to Prospect street, on the brow of the Red Hill. Surveyors were appointed, who, on the 19th of November, 1870, made a return, laying out a public road sixty-six feet wide, from State street to Prospect street. This new road, called Central avenue, intersects the route of the railroad of the defendants, at the west side of First street, and runs diagonally along and across it, to and beyond the west side of Second street, a distance of about four hundred and fifty feet. The defendants proceeded with their embankment, providing bridges at First and Second streets, but filling in the parts of Central avenue which were laid upon their located route, and making no bridge or tunnel for passing along that street. The complainants did not remonstrate or interfere with the work in progress until the filing of their bill, July 10th, 1871. They apply for an injunction to restrain the defendants from constructing their road across Central avenue, in such manner as will impede or

obstruct the passage of horses, carriages, or cattle on or over that avenue, or, in effect, without constructing a bridge or tunnel under the embankment for such passage.

The power of this court to prevent injury and correct wrong before committed, by preliminary injunction issued at the commencement of a suit, and before the merits of the controversy are fully investigated, is one of its peculiar and most useful functions. But, like all extraordinary powers, if abused, or exercised without great caution, it may be productive of incalculable evils. On this account it is never exercised but under certain conditions.

In the first place, the right of the complainants in the subject matter in dispute, and to the remedy applied for, must be clear to the court, and free from reasonable or serious doubts, or established by proceedings at law. If the facts upon which the right depends are established or admitted, and the principles of law which, on those facts, would give the right, are settled and established in this state, it is not always necessary that the claim of the complainant should have been established in a suit at law. The Chancellor, in such case, may apply the principles as settled by the courts of law, to the facts, and allow the injunction. But when the principles of law on which the right rests are disputed, and will admit of doubt, a court of equity, although satisfied as to what is the correct conclusion of law upon the facts, may not, upon the opinion of the equity judge, without a decision of the courts at law establishing such principles, grant the injunction. This doctrine was fully declared and established by the Court of Appeals of this state, in the case of *The Morris and Essex Railroad Company* v. *Prudden*, 5 *C. E. Green* 530. Another principle, also recognized in that case, is, that an injunction must not issue when the benefit secured by it to one party is of little importance, while it will operate oppressively and to the great annoyance and injury of the other party, unless the wrong complained of is wanton and unprovoked.

The defendants are constructing their road under a charter

granted by the legislature, and claim that this charter gives them the right to cross any public road not in use when it was granted, or at least when the road was laid out, without providing a bridge or passage over or under it. This right depends upon the construction of an act approved March 16th, 1870, being a supplement to the charter of the New Jersey Western Railroad Company. This is the act from which that company derived the power to extend their road across Bergen and Hudson counties, to the Hudson river, and to construct it at the place in question. The first section gives them "the power to acquire, hold, use, and possess all lands, rights, and property required for such extension, in the manner provided in the act of incorporation; subject, however, to the same rights, privileges, and provisions, in the use and enjoyment of the same, as contained in that act." The second section declares that they shall be invested with all the rights, powers, privileges, and franchises theretofore granted to the Hackensack and New York Railroad Company, by their act of incorporation, in respect to the location, laying out, and construction of the extension. This supplement thus clearly grants all the powers and privileges of both companies in constructing the extension.

The tenth section of the charter of the Western Company required them to construct and maintain bridges or passages across their road when any road "now or hereafter laid out shall cross the same." The tenth section of the charter of the Hackensack and New York Company, approved in 1856, required such bridges or passages "where any road now in use shall cross the same." The right and privilege granted by one section was to build a road with passages at every road "then or thereafter laid out;" by the other, to build one with passages at every road "then in use." The franchise, as granted by the second section, is more valuable and extensive than that granted in the first, and the franchise and other powers and privileges are expressly granted as to the laying out and construction of the road. On the other hand, the first section makes the grant subject to the

same provisions, in the construction, use, and enjoyment of the same, as are contained in the Western Company's charter. There is a discrepancy in these two sections; and notwithstanding the rule, that in grants like this the construction must be in favor of the public and against the grantee, I should hold that where two sections of the same charter granted the same powers, but one to a greater extent than the other, the construction must be that the largest power is given. But in this case the grant of the power to extend the road is expressly given, subject "to the provisions" of the Western Company's charter; and one of these provisions is a passage to be provided for every road, whenever laid out. Yet the narrow construction will deprive the first clause of the second section of all effect, contrary to a settled rule of construction. That clause was intended for some purpose, and if it is restrained to the purposes declared in the first section, or to the rights, powers, privileges, and provisions of the original charter, it has no effect.

The construction of this act, or of any statute with similar discordant provisions, has never been settled by the courts of law, and it much depends upon which of the many and various rules for the construction of statutes the court of law that shall settle the construction may apply. To me, whatever may be my own view, it is doubtful what construction will be given by the law courts. The right of the complainants to have a passage at this crossing is not settled or clear, and as the injunction depends on this right, it must be refused.

Further: the injury to the complainants is neither great nor irreparable. The avenue has never been opened or used for public travel. The consequence of refusing the injunction will be, that the defendants may go on to complete and continue their embankment until the right shall be tried and determined at law. If that is against the defendants, they will be compelled to remove the embankment, or provide a passage through it; and the injury cannot be great that will

occur in the mean time, by the want of the use of an avenue, just laid out over a low, wet meadow, not yet graded or fit for travel, and which will probably take months to prepare it for use. In Prudden's case, the court held that "it must be a strong and mischievous case of pressing necessity, or the right must have been previously established at law, to entitle the party to call upon a court of equity."

But again: under the rule laid down in that case, the fact that the benefit secured to the complainants is of little importance, while the injunction will operate oppressively, and to the great annoyance of the defendants, must prevent the granting of this injunction at this stage of the cause. The injury to the complainants or the public, by refusing it, as above stated, will be small. The defendants, on the other hand, will be seriously delayed in the completion of an important public work, or be compelled to build a bridge, in the shape of a tunnel, several hundred feet long, intersecting a bridge, which they have erected and are bound to maintain, over Second street; and which cannot be constructed without an outlay equal to the cost of grading nine miles of the road. They would have to remove the earth dumped on the embankment before the filing of the bill, at a cost of $2000. A diagonal crossing, by a public road, in the manner in which this road has been laid across or along the defendants' railroad, at an embankment as high as this, is, I think, unprecedented in engineering. If the bridging required is at all practicable, it would be at an expense which would not be warranted in the construction of any road in that section of the country.

I do not think that the defendants are deprived of the benefit of the rule, by the wrong being wanton and unprovoked. It was not wanton. They made their embankment, in this place, under an honest, even if mistaken, construction of their corporate privileges.

The complainants can, with small expense and little inconvenience to the public, remedy the obstruction complained of. They can vacate and lay out streets. By

changing the course of Central avenue, where it meets the defendants' embankment on the north side, so as to run along the north side of that embankment, for three hundred feet, to Second street, vehicles could pass under the bridge at Second street into the avenue, with an increase of distance of less than fifty feet. If the complainants are, at law, entitled to the legal rights claimed by them, they are not bound to do this. But when the injury of which they complain, can be obviated by themselves at so little cost and inconvenience, this court will not, on account of it, issue an injunction to restrain the progress of an important public work.

In Prudden's case, the railroad was laid in Dickerson street, upon which was the front of Prudden's wheelwright shop and his dwelling-house; and the injury complained of was, that the rails so obstructed access to the front of his premises, that wagons could not conveniently stand there to load or unload. But Morris street, a cross street leading from Dickerson street to the north, ran along side his premises, and gave him access to the side of his lot, and thus, through the rear of the lot, to the back side of his house and shop; and as it did not appear that the exigencies of his business imperatively required the use of the street in front, or of the front of his house or shop, the court held that the injunction should not have issued. In this case, the expense and inconvenience of changing Central avenue for a few feet, as suggested above, would not be as great, comparatively, as to Prudden, in opening access through his back yard, and the rear of his shop, to make good the want of access to the front.

These views make it unnecessary to consider the points raised, that the complainants are not a body corporate, and cannot maintain a suit in their own name; and that by allowing the defendants to go on with their work, without interference or remonstrance, for more than six months, and to expend a large amount of money in the work, they have lost the right to be protected by a court of equity.

I am of opinion that this court cannot interfere by injunction, or in any other way, between these parties, until the right claimed by the complainants is established at law.